MARKMAN, J.
We granted leave to appeal in this case to decide whether a plaintiff who suffers injury after slipping and falling in the parking lot of a bar where plaintiff has become visibly intoxicated may, notwithstanding the exclusivity provision of the dramshop act, MCL 436.1801(10),[1] pursue a common-law premises liability cause of action against that bar. The Court of Appeals affirmed the jury’s $226,000 verdict in favor of plaintiff, holding that the dramshop act did not preclude plaintiffs premises liability cause of action, and *324 that the bar’s knowledge of plaintiffs intoxication was relevant regarding whether the bar breached its duty to protect plaintiff against the ice and snow in its parking lot. Although we agree in part with the Court of Appeals and hold that the dramshop act does not preclude such a cause of action, we reject the holding by the Court of Appeals that the bar’s knowledge of plaintiffs intoxication has any relevance. Lugo v Ameritech Corp, Inc, 464 Mich 512, 520; 629 NW2d 384 (2001). Accordingly, we reverse the decision of the Court of Appeals, vacate the jury verdict, and remand this case for further proceedings consistent with this opinion.
I. BACKGROUND
On March 6,1996, during a blizzard, plaintiff entered defendant’s bar and consumed nine alcoholic drinks in approximately three hours. After leaving the bar, plaintiff, who was visibly intoxicated and had a blood alcohol content of 0.25 percent,[2] sustained injuries when he slipped and fell on ice and snow that had accumulated in defendant’s parking lot during the blizzard. Accordingly, plaintiff filed a premises liability cause of action against defendant, claiming that defendant breached its duty of care by failing to warn plaintiff of the ice and snow in defendant’s parking lot and failing to remove such ice and snow within a reasonable time after it had accumulated in defendant’s parking lot.
Over defense objection to an instruction on M Civ JI 19.03, the trial court delivered both the “Duty Of Possessor Of Land, Premises, Or Place Of Business To *325 Invitee” instruction[3] and the “Duty Of Possessor Of Land, Premises, Or Place Of Business To A Business Invitee Regarding Natural Accumulation Of Ice And Snow” instruction.[4] While finding plaintiff fifty percent comparatively negligent, the jury returned a $226,000 verdict in plaintiffs favor. Because plaintiff believed that the jury’s failure to award noneconomic damages was against the great weight of the evidence, he filed a motion for additur or for a new trial, which motion the trial court denied.
Defendant appealed, raising the issues of instructional error and error in the calculation of damages. Plaintiff cross-appealed, contending that the trial court erred in denying his motion for additur or for a new trial. In its first opinion, the Court of Appeals reversed the decision of the trial court denying plaintiffs motion *326 for additur or for a new trial.[5] However, on defendant’s motion for rehearing, the Court of Appeals affirmed the decision of the trial court in all respects.[6]
Defendant sought leave to appeal in this Court, arguing that a premises liability cause of action that is alleged to be grounded in the consumption of alcohol is a dramshop action in another guise and, thus, because of the exclusivity provision of the dramshop act, plaintiff should be precluded from pursuing any other cause of action, including a premises liability action.
II. STANDARD OF REVIEW
Statutory interpretation is an issue of law that is reviewed de novo. G C Timmis & Co v Guardian Alarm Co, 468 Mich 416, 419; 662 NW2d 710 (2003).
III. ANALYSIS
Defendant argues that plaintiffs premises liability cause of action is precluded by the exclusivity provision of the dramshop act, MCL 436.1801(10), which provides:
This section [MCL 436.1801] provides the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor.[7]
*327 Moreover, because the act also provides that “[t]he alleged visibly intoxicated person shall not have a cause of action pursuant to this section..MCL 436.1801(9), defendant argues that plaintiff, as the alleged visibly intoxicated person, has no cause of action at all under the dramshop act.
Plaintiff does not contest that, if his cause of action, in fact, did arise from defendant’s unlawful “selling, giving, or furnishing” of alcohol, he would be barred from bringing this cause of action by the dramshop act. However, plaintiff instead asserts that the act does not preclude a premises liability action filed by a visibly intoxicated person against the dramshop that unlawfully served alcohol to that person.
We agree with plaintiff. Here, plaintiffs action arises from injuries he sustained after he slipped and fell in defendant’s icy and snow-covered parking lot. That is, plaintiffs action is based on the claim that defendant did not sufficiently protect him as an invitee from a dangerous condition on the premises, specifically defendant’s icy and snow-covered parking lot. Accordingly, this is not an action arising from the unlawful “selling, giving, or furnishing” of alcohol. MCL 436.1801(3). Rather, it is an ordinary premises liability action. This is made evident by considering that, had plaintiff not been served any alcohol at all by defendant, but still sustained the same injuries, plaintiff would not be precluded from asserting a premises liability action for such injuries on the basis of his invitee status.[8]
*328 Because we hold that the dramshop act does not preclude plaintiffs premises liability cause of action, we next consider the relevancy of plaintiffs intoxication and defendant’s knowledge of such intoxication. Generally, a premises possessor owes a duty of care to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. Bertrand v Alan Ford, Inc, 449 Mich 606, 609; 537 NW2d 185 (1995). This duty generally does not encompass a duty to protect an invitee from “open and obvious” dangers. Lugo, supra at 516. However, if there are “special aspects” of a condition that make even an “open and obvious” danger “unreasonably dangerous,” the premises possessor maintains a duty to undertake reasonable precautions to protect invitees from such danger. Id. at 517.[9] To *329 determine whether a condition is “open and obvious,” or whether there are “special aspects” that render even an “open and obvious” condition “unreasonably dangerous,” the fact-finder must utilize an objective standard, i.e., a reasonably prudent person standard. Id. That is, in a premises liability action, the fact-finder must consider the “condition of the premises,” not the condition of the plaintiff. Id. at 518 n 2.[10] A visibly intoxicated person is held to the same standard of reasonable conduct as a sober person.
Accordingly, the Court of Appeals erred when it stated:
Defendant’s service of alcohol was implicated only as it related to defendant’s knowledge of plaintiffs condition as relevant to whether defendant’s conduct in failing to inspect or clear the parking lot and failing to warn plaintiff was reasonable. [November 30, 2001, slip op at 4.]
Rather, defendant’s knowledge that plaintiff was intoxicated does not affect the legal duties it owes to plaintiff. *330 That is, although defendant served plaintiff alcohol and was apparently aware that plaintiff was intoxicated, defendant does not owe plaintiff any heightened duty of care. Rather, in determining whether defendant breached its duty, the fact-finder must decide only whether a reasonably prudent person would have slipped and fallen on the ice and snow in defendant’s parking lot, or whether that reasonably prudent person should have been warned by defendant of the dangerous condition.
If plaintiffs extent of intoxication were considered in determining defendant’s duty of care to plaintiff, such consideration, in our judgment, would circumvent the dramshop act’s prohibition against permitting a visibly intoxicated person from collecting monetary damages arising from defendant’s unlawful “selling, giving, or furnishing” of alcohol to such plaintiff. MCL 436.1801(9X10). The dramshop act protects dramshop owners by prohibiting a visibly intoxicated person from recovering damages that have arisen from the dram-shop unlawfully “selling, giving, or furnishing” alcohol to such person. In our judgment, the statutory protection would be nullified if dramshop owners, in premises liability actions, were held to a higher duty of care because they unlawfully sold alcohol to a visibly intoxicated person. Accordingly, a dramshop owner, as with any other property owner, has a duty toward the reasonably prudent invitee; he does not, however, have a heightened duty in the case of the visibly intoxicated invitee. Concomitantly, there is no diminished standard of reasonable conduct on the part of a visibly intoxicated invitee in comparison with any other invitee.
Defendant raises one last argument concerning the jury instructions. The “Note on Use” of M Civ JI 19.05 states that “this instruction [pertaining to the obliga *331 tions of a premises possessor to dimmish the hazards arising from the accumulation of ice and snow] should be used where applicable instead of the more general M Civ JI 19.03 [pertaining to the obligations of a premises possessor to warn of open and obvious dangers] ....” By-virtue of the “instead of” language, defendant argues that § 19.03 and § 19.05 are mutually exclusive and that the trial court erred in giving § 19.03. Defendant argues that § 19.05 applies in a single specific situation—where there is an accumulation of ice and snow—and that in such a situation, the trial court should only have instructed on § 19.05. We disagree. Under Lugo, a premises possessor has a duty to “protect” an invitee from dangers that are either not “open and obvious,” or, although “open and obvious,” contain “special aspects” that make such dangers “unreasonably dangerous.” Lugo, supra at 516-517. Because the duty to “protect,” as that term was used in Lugo, is broader and more general than either the duty to “warn,” § 19.03, or the duty to “diminish” a hazard caused by ice and snow, § 19.05, we believe that the duty to “protect” encompasses both the duty to “warn” and the duty to “diminish” in these instructions. Accordingly, to the extent that the “Note on Use” of § 19.05 implies that § 19.03 and § 19.05 are mutually exclusive, such an implication is unwarranted under Lugo, and the trial court did not err on this ground in delivering both instructions.
However, we believe that § 19.03 is an inaccurate instruction. Under Lugo, a premises possessor must protect an invitee against an “open and obvious” danger only if such danger contains “special aspects” that make it “unreasonably dangerous.” Lugo, supra at 517. Because “special aspects” are not defined with regard to whether a premises possessor should expect that an invitee will not “discover the danger” or will not “protect against it,” § 19.03, but rather by whether an *332 otherwise “open and obvious” danger is “effectively unavoidable” or “impose[s] an unreasonably high risk of severe harm” to an invitee, Lugo, supra at 518, we believe that § 19.03 sets forth an inaccurate statement of premises liability law.[11]
We further believe that § 19.05 sets forth an inaccurate instruction. Under Lugo, a premises possessor must protect an invitee against an “open and obvious” danger only if such danger contains “special aspects” that make it “unreasonably dangerous.” Lugo, supra at 517. Thus, in the context of an accumulation of snow and ice, Lugo means that, when such an accumulation is “open and obvious,” a premises possessor must “take reasonable measures within a reasonable period of time after the accumulation of snow and ice to diminish the hazard of injury to [plaintiff]” only if there is some “special aspect” that makes such accumulation “unreasonably dangerous.”[12] Section 19.05 ignores Lugo's “unreasonably dangerous” requirement by imposing an absolute duty on a premises possessor irrespective of whether the accumulation of snow and ice creates *333 “special aspects” making such accumulation “unreasonably dangerous.”[13] Such an absolute duty does not exist under Lugo.
W. CONCLUSION
We agree in part with the Court of Appeals and hold that the dramshop act does not preclude plaintiffs *334 premises liability cause of action because plaintiffs injuries arose from something other than defendant unlawfully “selling, giving, or furnishing” alcohol to plaintiff.[14] However, we also hold that a dramshop’s knowledge of an invitee’s intoxication is irrelevant in determining whether that dramshop has breached its duty of care toward such invitee, and that there is no diminished standard of conduct on the part of a visibly intoxicated invitee. Accordingly, we reverse the judgment of the Court of Appeals, vacate the jury verdict, and remand this case for further proceedings consistent with this opinion.[15]
Corrigan, C. J., and Taylor and Young, JJ., concurred with MARKMAN, J.

 Formerly, MCL 423.22, before April 14, 1998.

 Plaintiffs expert testified that given plaintiffs ingestion of so much alcohol, it was highly improbable that plaintiff could “mask” the degree of his intoxication. The expert apparently concluded that plaintiff was “visibly intoxicated.”

 M Civ JI 19.03 states, in relevant part:
A possessor must warn the invitee of dangers that are known or that should have been known to the possessor unless those dangers are open and obvious. However, a possessor must warn an invitee of an open and obvious danger if the possessor should expect that an invitee will not discover the danger or will not protect [himself] against it.

Note on Use

This paragraph is to be used in cases involving a claim of failure to warn.

 M Civ JI 19.05 states:
It was the duty of [defendant] to take reasonable measures within a reasonable period of time after the accumulation of snow and ice to diminish the hazard of injury to [plaintiff].

Note on Use

This instruction should be used where applicable instead of the more general M Civ JI 19.03 Duty of Possessor of Land, Premises, or Place of Business to Invitee. It does not apply to public sidewalks.

 Unpublished opinion per curiam, issued May 11, 2001 (Docket No. 210920).

 Unpublished opinion per curiam, issued November 30, 2001 (Docket No. 201920).

 “[T]he dramshop act affords the exclusive remedy for injuries arising out of an unlawful sale, giving away, or furnishing of intoxicants.” Manuel v Weitzman, 386 Mich 157, 164-165; 191 NW2d 474 (1971), quoting De Villez v Schifano, 23 Mich App 72, 77; 178 NW2d 147 (1970) (emphasis in original). An “unlawful” sale is a sale to either a minor or a visibly intoxicated person. MCL 436.1801(3).

 Because this is not an action arising from the unlawful “selling, giving, or furnishing” of alcohol, and because the common law recognizes a cause of action for defendant’s alleged negligence, Lugo, supra at 516-517, our holding that the dramshop act does not preclude plaintiffs cause of action is consistent with the test set forth by this Court in *328 Manuel v Weitzman, 386 Mich 157; 191 NW2d 474 (1971), as described in Millross v Plum Hollow Golf Club, 429 Mich 178, 187; 413 NW2d 17 (1987):
“(1) Does the claim against ‘the tavern owner’ arise out of an unlawful sale, giving away, or furnishing of intoxicants? If so, the dramshop act is the exclusive remedy.
“(2) If the claim arises out of conduct other than selling, giving away, or furnishing of intoxicants, does the common law recognize a cause of action for the negligent conduct? If so, then the dramshop act neither abrogates nor controls the common-law action. If not, there is no independent common-law claim.”
See also Jackson v PKM Corp, 430 Mich 262, 276-277; 422 NW2d 657 (1988) (applying the Manuel test as described in Millross).

 By his exaggerated language—“the majority [is] using this case as a vehicle to rewrite Michigan premises liability law,"post at 335; “[t]oday’s decision is simply the latest installment in the majority’s systematic dismantling of the Restatement of Torts approach,” id. at 336; “the majority. .. overrules decades of well-reasoned precedent, id.; “the majority repudiates the Restatement approach,” post at 342,—Justice Cavanagh is again merely raising issues he initially raised in his concurring opinion in Lugo, while in the process giving no effect to the *329 “special aspects” doctrine articulated in that decision. Lugo, supra at 527. He is, of course, entitled to reargue Lugo for as long as he wishes, but it should he understood that the instant case represents nothing more than an ordinary application of the principles set forth in that opinion.

 In making a determination about whether an alleged dangerous condition is “open and obvious,” such a determination is not dependent on the characteristics of a particular plaintiff, but rather on the characteristics of a reasonably prudent person. Bertrand, supra at 617; Radtke v Everett, 442 Mich 368, 390-391; 501 NW2d 155 (1993), quoting 2 Restatement Torts, 2d, § 283, comment c, p 13; Sidorowicz v Chicken Shack, Inc, 469 Mich 919 (2003) (Tayloh, J., concurring). By imposing an obligation upon a homeowner or other premises possessor, not merely to make his or her premises reasonably safe under ordinary circumstances, but also under every conceivable circumstance, Justice Cavanagh in his concurrence/dissent, post at 339-340, would impose a substantially increased legal burden upon such persons.

 Moreover, “an invitee,” as used in § 19.03, must be understood to refer to a “reasonably prudent” invitee. Lugo, supra at 523. Accordingly, a trial court must explain that this term refers to an objective invitee.

 Because we are seeking here to conform M Civ JI 19.05 with Lugo, and because Lugo has brought some reasonable measure of clarity to a law that had previously been in disarray, we respectfully disagree with Justice CAVANAGH’S assertion in his concurrence/dissent that, “[i]n qualifying M Civ JI 19.05 with its Lugo standard, the majority has added uncertainty to Michigan premises liability law.” Post at 343. Rather, the majority believes that it has moved in precisely the opposite direction by seeking to coordinate and render consistent the case law of Michigan rather than allowing, as has too often been true in recent years, multiple, conflicting expressions of the law to coexist, essentially allowing litigants to choose among inconsistent opinions in the manner that a patron at a Chinese restaurant might choose among dinner items from Column A or Column B. See, e.g., Nawrocki v Macomb Co Rd Comm, 463 Mich 143; 615 NW2d 702 (2000).

 Quinlivan v The Great Atlantic & Pacific Tea Co, Inc, 395 Mich 244, 261; 235 NW2d 732 (1975), must he understood in light of this Court’s subsequent decisions in Bertrand and Lugo. Concerning the duty of care a homeowner or other premises possessor owes to an invitee arising from the accumulation of ice and snow, Justice Weaver relies in her concurrence/dissent on Quinlivan and asserts that “premises possessors owed a duty to invitees to take ‘reasonable measures ... within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee.’ ” Post at 344 (citation omitted). The majority is unprepared to hold that, absent any special aspects, and absent consideration of the open and obvious nature of a hazard, a homeowner or other premises possessor owes an absolute duty to an invitee to diminish the hazards attendant to the accumulation of ice and snow.
Further, we are perplexed how Justice Weaver, in light of her concurring opinion in Lugo, supra at 544, in which she asserted that only the open and obvious standard should apply in determining whether a homeowner or other premises possessor is hable to an invitee for a dangerous condition on his premises, would now disavow the majority’s supposed application of Lugo to Quinlivan on the grounds that not only are “snow and ice accumulations ... obvious,” but “the ‘rigorous duty’ owed by invitors to protect invitees from unreasonable harm justified] the imposition of a uniform duty on invitors regarding accumulations of snow and ice.” Post at 344. Consistent with her opinion in Lugo, we are hard-pressed to understand how Justice Weaver could now conclude that a homeowner or other premises possessor has a duty of care to diminish a hazard caused by the accumulation of ice and snow, even if such hazard is open and obvious. In other words, Justice Weaver criticizes the majority in Lugo for fading to accord the “openness and obviousness” of a hazard exclusive consideration, whde in the instant case, she criticizes the majority for according the “openness and obviousness” of a hazard excessive consideration. Her positions in these two cases are wholly incompatible.

 However, contrary to the dissent, post at 335, we do not reach this conclusion on the basis of our assessment of the “spirit” of the dramshop act, but rather on the basis of our assessment of its language.

 Although the jury found plaintiff fifty percent comparatively negligent, it does not necessarily follow that the jury found that a reasonably prudent person would not have fallen in defendant’s parking lot. Instead, by apportioning some negligence to plaintiff, the jury conceivably was finding only that, although a reasonably prudent person would also have fallen, such a person would not have sustained the same degree of injuries suffered by the visibly intoxicated plaintiff. We remand this case in order to enable the trial court to review de novo the proper legal standards and jury instructions in light of the facts of this case.