RICHARDSON v ROCKWOOD CENTER, LLC

Docket No. 274135. Submitted April 4, 2007, at Detroit. Decided April 12, 2007, at 9:05 a.m.

Robert and Jean Richardson brought an action in the Wayne Circuit Court against Rockwood Center, L.L.C., and Emilia and Diana Barbu after Robert Richardson was struck by a vehicle driven by Diana Barbu and owned by Emilia Barbu in the parking lot of a shopping center owned by Rockwood Center. The design of the parking lot required pedestrians to cross two unmarked and uncontrolled lanes of moving vehicles to get from the parking lot to the stores and back. Rockwood Center moved for summary disposition, arguing that the open and obvious danger doctrine barred the plaintiffs' recovery and that the parking lot's design did not proximately cause Robert Richardson's injuries. The trial court, Cynthia Diane Stephens, J., denied the motion, and Rockwood Center appealed by leave granted.

The Court of Appeals *held*:

The trial court erred when it failed to grant summary disposition based on an application of the open and obvious danger doctrine. Parking lots commonly lack signs or other traffic control devices, and a common condition does not give rise to an unreasonable risk of harm. Further, the hazards posed to pedestrians by moving vehicles in parking lots is open and obvious to the most casual inspection by an average pedestrian of ordinary intelligence, and the plaintiff identified no special aspects that would remove this case from an application of the open and obvious danger doctrine.

Reversed and remanded for entry of an order granting summary disposition to Rockwood Center.

DAVIS, J., dissenting, would hold that summary disposition was properly denied because reasonable minds can differ regarding whether a landowner, having engineered the premises to create an unavoidable danger that poses an unreasonably high risk of severe harm by requiring business invitees to cross two lanes of uncontrolled vehicular traffic on foot to get from the parking lot to the stores and back, has an obligation to manage and minimize that hazard despite the fact that the danger is open and obvious.

NEGLIGENCE — PREMISES LIABILITY — OPEN AND OBVIOUS DANGERS — PARKING
    LOTS.

> A parking lot design that requires business invitees to traverse two
> lanes of uncontrolled vehicular traffic presents no special aspects that
> make the open and obvious dangers to pedestrians unreasonable.

*Ronald C. Wernette, Jr.,* for the plaintiffs.

*Cardelli, Lanfear & Buikema, PC* (by *Anthony F. Caffrey III*), for the defendant.

Before: WILDER, P.J., and SAWYER and DAVIS, JJ.

SAWYER, J. This is a premises liability action arising from an accident in a parking lot involving a pedestrian and a motor vehicle. Defendant Rockwood Center, L.L.C. (defendant), appeals by leave granted an order of the circuit court that denied its motion for summary disposition, which was predicated on an application of the open and obvious danger doctrine and the assertion of a lack of causation. We reverse and remand.

According to plaintiff Robert Richardson (plaintiff), at the time of the accident, he was leaving a store located in defendant's shopping center. He describes the parking lot area as having traffic lanes that separate the store and the double rows of parking spaces in front of the store. Richardson further testified that as he crossed the traffic lanes and entered the second lane of traffic, which was the outgoing traffic lane, he was struck by a vehicle traveling in that lane driven by defendant Diana Barbu.

Diana Barbu, the driver of the vehicle that struck Richardson, told the police that she did not see Richardson because the sun was in her eyes. She further reported that she braked to slow down before striking Richardson. She knew she had hit someone when she felt a bump at the front of her vehicle.

After the accident, plaintiffs commenced this action against defendant, seeking to recover under a premises liability theory, and against the driver and the owner of the vehicle. Plaintiff Jean Richardson sought recovery under a loss of consortium theory.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). Defendant argued that it was entitled to summary disposition because, under an application of the open and obvious danger doctrine, it owed no duty to plaintiff because no reasonable fact-finder could conclude that the condition of the parking lot involved an unreasonable risk of harm and because there were no special aspects of the parking lot that would remove this matter from the open and obvious danger doctrine. Defendant also argued that it was entitled to summary disposition because the design of the parking lot was not a proximate cause of plaintiff's injuries.

Plaintiffs argued that the open and obvious danger doctrine did not bar the instant action against defendant because the danger to Richardson of being struck by a moving vehicle where pedestrian invitees were required to negotiate two unmarked and uncontrolled vehicle travel lanes without defendant taking reasonable precautions for invitee safety was both effectively "unavoidable" and also "imposed a uniquely high likelihood of harm or severity of harm."

Opining from the bench, the trial court declined to grant summary disposition on the proximate cause issue, and took the matter of the open and obvious danger doctrine under advisement. It later issued an opinion denying summary disposition on that basis as well. We thereafter granted leave to appeal.

Generally, the owner or possessor of a premises owes a duty to an invitee to exercise reasonable care to

protect the invitee from an unreasonable risk of harm
caused by a dangerous condition on the land. *Joyce v
Rubin*, 249 Mich App 231, 238; 642 NW2d 360 (2002).
This duty, however, does not generally encompass the
removal of open and obvious dangers. An open and
obvious danger exists where the dangers are known to
the invitees or are so obvious that the invitee might
reasonably be expected to discover them, i.e., an aver-
age user with ordinary intelligence would have been
able to discover the danger and risk presented upon
casual inspection. *Corey v Davenport College of Busi-
ness (On Remand)*, 251 Mich App 1, 5; 649 NW2d 392
(2002); *Joyce, supra* at 238. The focus is on the condi-
tion of the premises. *Mann v Shusteric Enterprises, Inc*,
470 Mich 320, 329; 683 NW2d 573 (2004). If the risk of
harm remains unreasonable despite the obviousness or
despite knowledge of it by the invitee, then the special
aspects of the circumstances may be such that the
invitor is required to undertake reasonable precautions
within a reasonable time to diminish the hazard. *Id.* at
332; *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 517; 629
NW2d 384 (2001); *Bertrand v Alan Ford, Inc*, 449 Mich
606, 611; 537 NW2d 185 (1995) (applying 2 Restate-
ment Torts, 2d, §§ 343 & 343A). Special aspects that
serve to remove a condition from the open and obvious
danger doctrine are those that "give rise to a uniquely
high likelihood of harm or severity of harm if the risk is
not avoided . . . ." *Lugo, supra* at 519. The illustrations
of special-aspect conditions discussed in *Lugo* were (1)
"an unguarded thirty foot deep pit in the middle of a
parking lot" resulting in a fall of an extended distance
and (2) standing water at the only exit of a commercial
building, resulting in the condition being unavoidable
because no alternative route is available. *Id.* at 518.
"Neither a common condition nor an avoidable condi-
tion is uniquely dangerous." *Kenny v Kaatz Funeral*

*Home, Inc,* 264 Mich App 99, 117; 689 NW2d 737 (2004) (GRIFFIN, J., dissenting), adopted 472 Mich 929 (2005).

There does not appear to be any published cases dealing with the application of the open and obvious doctrine to parking lot design. Defendant does, however, direct our attention to this Court's decision in *Kirejczyk v Hall*, unpublished opinion per curiam of the Court of Appeals, issued November 5, 2002 (Docket No. 233708), to answer the question whether the hazards associated with a pedestrian moving through a parking lot and across traffic lanes to a store are open and obvious.

*Kirejczyk* arose from a motor vehicle accident occurring in a parking lot of a Sears store. Slip op at 1.

> Kirejczyk's position is that the parking lot was unreasonably dangerous in its design and layout because of a lack of signs or other traffic controls. A premises possessor generally owes invitees a duty to protect them against an unreasonable risk of harm caused by a dangerous condition on the land. However, this duty does not generally include removing open and obvious dangers. The critical question is whether there are "special aspects" that differentiate an open and obvious condition from "typical open and obvious risks" and thereby create an unreasonable risk of harm. In this case, the condition of the parking lot was open and obvious. Further, it is typical for parking lots outside businesses to lack signs or other traffic controls. Drivers are expected to simply rely on traffic laws and customary practices while driving in such parking lots. Thus, we conclude that the trial court correctly granted summary disposition in favor of Sears because no reasonable factfinder could conclude that the condition of the parking lot involved an unreasonable risk of harm. [Slip op at 1-2.]

Here, as in *Kirejczyk*, the parking lot lacked signs or any traffic control devices or markings. The panel in

*Kirejczyk* noted that "it is typical for parking lots outside businesses to lack signs or other traffic controls." Slip op at 2. A common condition is not uniquely dangerous and, therefore, does not give rise to an unreasonable risk of harm. *Kenny, supra.* Further, the hazards posed to pedestrians by motor vehicles moving through parking lots, getting into parking spaces, and backing out of parking spaces is open and obvious upon the most casual inspection by an average pedestrian of ordinary intelligence. The lack of signs or other traffic control devices or markings does not constitute a "special aspect" that would remove this case from an application of the open and obvious danger doctrine.

In sum, a person pushing a shopping cart across a vehicle's path is a rather obvious "sign" that the vehicle should stop and yield to the pedestrian. Equally obvious is that a pedestrian in a parking lot should look both ways before crossing the driving lane to ensure that he or she is not about to be struck by a vehicle. Although perhaps more relevant to the issue of causation, we would also note the very basic premise that a driver who cannot see should stop the vehicle. Plaintiff points to no special aspect of this parking lot that prevented him from seeing the moving vehicle, prevented the driver from seeing him, or prevented the driver from stopping her vehicle when she was unable to see. Thus, to the extent that the parking lot presented a danger, that danger was open and obvious. Accordingly, the trial court erred when it failed to grant summary disposition based on an application of the open and obvious danger doctrine.

Because we conclude that summary disposition should have been granted on the basis of the open and obvious danger doctrine, we need not address the question whether defendant was entitled to summary disposition based on the causation issue as well.

Reversed and remanded with instructions to enter summary disposition in favor of defendant. We do not retain jurisdiction. Defendant may tax costs.

WILDER, P.J., concurred.

DAVIS, J. (*dissenting*). I respectfully dissent.

The facts in this case center around what is commonly known as a "strip mall," a kind of shopping center with a central parking lot bordered by a row of stores, all of which front on a shared, unenclosed sidewalk. A double lane for vehicular traffic runs parallel to the sidewalk, between the stores and the actual parking area. Thus, shoppers are required to traverse the vehicular traffic lanes on foot when walking from their cars to the stores. Defendant Rockwood Center, L.L.C., is the owner of the shopping center at issue here. As the majority explains, plaintiff Robert Richardson was leaving one of the stores in defendant's shopping center and crossing the second, outgoing traffic lane, when he was struck by an automobile driven by Diana Barbu. Barbu reported that she was unable to see plaintiff because of the sun in her eyes, but she braked to slow down before striking plaintiff. Pertinent to this appeal is plaintiff's premises liability action against defendant Rockwood Center.

I would first note that this case comes before us on a summary dismissal pursuant to MCR 2.116(C)(10). At issue, therefore, is only whether there exists a genuine factual question to be resolved at a trial. *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999). A "mere promise" to establish a factual question or the "mere possibility" that one might arise is insufficient. *Id.* at 121. However, all the submitted evidence "and all legitimate inferences" must be viewed in the light most

favorable to the party opposing the motion. *Coblentz v City of Novi*, 475 Mich 558, 567-568; 719 NW2d 73 (2006). The party opposing the motion is further entitled to the benefit of any reasonable doubt. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

It is worth additionally noting that there is also no dispute that plaintiff was a commercial business invitee of defendant, and was therefore owed by defendant "the highest level of protection under premises liability law" to make the premises reasonably safe. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-597, 604; 614 NW2d 88 (2000). There is no dispute that the traffic lanes were in fact unmarked and lacking in any sort of control device, sign, or other marking to designate a safe—or even merely specified—place for pedestrians to cross those lanes. The premises did, however, feature a designated area for returning shopping carts, and it was while plaintiff was attempting to return a cart to this location that he was struck. There is also no dispute that any would-be shopper on defendant's premises would need to cross those traffic lanes in order to conduct any shopping.

The majority correctly explains, as the parties also agreed below, that

[t]he focus is on the condition of the premises. *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 329; 683 NW2d 573 (2004). If the risk of harm remains unreasonable despite the obviousness or despite knowledge of it by the invitee, then the special aspects of the circumstances may be such that the invitor is required to undertake reasonable precautions within a reasonable time to diminish the hazard. *Id.* at 332; *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 517; 629 NW2d 384 (2001); *Bertrand v Alan Ford, Inc*, 449 Mich 606, 611; 537 NW2d 185 (1995) (applying 2 Restatement Torts, 2d, §§ 343 & 343A). Special aspects that serve to remove a condition from the open and obvious

danger doctrine are those that "give rise to a uniquely high
likelihood of harm or severity of harm if the risk is not
avoided . . . ." *Lugo, supra* at 519. [*Ante* at 247.]

There is no dispute in this case that any hazards
inherent in defendant's premises were open and obvi-
ous.

There is no need to determine "whether the hazards
associated with a pedestrian moving through a parking
lot and across traffic lanes to a store are open and
obvious." Again, an affirmative answer with respect to
these premises was agreed on at the outset. The only
real dispute here is whether there exists a genuine
factual question whether the hazards on defendant's
premises present a uniquely high likelihood of harm or
severity of harm if the risk is not avoided, such that
defendant may be liable for them despite their openness
and obviousness. As the majority observed, "defendant
would have no liability in the absence of 'special as-
pects' that 'make a risk of harm unreasonable nonethe-
less,' irrespective of the specific kind of negligence
alleged." *Robertson v Blue Water Oil Co*, 268 Mich App
588, 592; 708 NW2d 749 (2005). " 'Special aspects' exist
if the condition 'is effectively unavoidable' or consti-
tutes 'an unreasonably high risk of severe harm.' " *Id.*
at 593, quoting *Lugo, supra* at 518. Thus, the determi-
nation of "special aspects" only requires one *or* the
other of these conditions to be met. The case relied on
by the majority, *Kirejczyk v Hall*, unpublished opinion
per curiam of the Court of Appeals, issued November 5,
2002 (Docket No. 233708), is not, in my opinion, dis-
positive because it is unpublished and therefore not
binding, MCR 7.215(J)(1), but more importantly, it
involved a plaintiff who was injured as a *motor vehicle
passenger* in an accident *between motor vehicles* in a
parking lot.

The parties finally agreed below, correctly, that the focus was not on Barbu's driving. However, the majority focuses in part on how a driver should respond to a pedestrian. I certainly do not disagree with the responsibilities the majority ascribes to drivers as a general matter. However, I do not see how that could possibly absolve the owner of a commercial property laid out as this one is from taking steps to minimize the very apparent hazard. As a practical matter, a parking lot and vehicular ingress and egress lanes that put drivers in immediate proximity to pedestrians as they enter or exit the stores is likely to result in injury—particularly if either the driver or the pedestrian or both are negligent, which is certainly within the average realm of contemplation. Therefore, I believe the majority's focus on the driver's responsibility is not relevant to the issue of the landowner's responsibility.

The majority relies on Judge GRIFFIN's observation that "[n]either a common condition nor an avoidable condition is uniquely dangerous." *Kenny v Kaatz Funeral Home, Inc*, 264 Mich App 99, 117; 689 NW2d 737 (2004) (GRIFFIN, J., dissenting), adopted 472 Mich 929; 697 NW2d 526 (2005). In *Kirejczyk*, this Court observed that the parking lots of many businesses lack traffic control devices or signage. However, Judge GRIFFIN and the case on which he relied for that statement, *Corey v Davenport College of Business (On Remand)*, 251 Mich App 1, 8-9; 649 NW2d 392 (2002), were discussing snow and ice accumulation. In *Corey*, the plaintiff was aware of the icy condition of some steps and an alternate route, but attempted to use the steps nevertheless; this Court found that the condition was open and obvious and avoidable, and falling down three steps was not the kind of unreasonably dangerous condition implied by the *Lugo* example of falling down a 30-foot pit. *Corey, supra* at 6-9. In *Kenny*, the plaintiff observed

others keeping themselves from slipping by holding onto cars before she herself walked around her car and slipped on ice; Judge GRIFFIN concluded that the absence of other parking spaces did not automatically make the ice unavoidable, and ice and snow in Michigan did not present a *uniquely high* risk of likely or severe harm to a lifelong Michigan resident. *Kenny, supra* at 119, 121. The fact that many businesses have parking lots without traffic control devices or signage is not a "common condition" in the same sense as natural ice and snow accumulation. There are many potential variables just in design or traffic flow alone that may heighten or reduce the hazard.

A fair reading of the pertinent portion of *Lugo* is that our Supreme Court intended effective unavoidability and unreasonably high risk of severe harm to be two *illustrative examples* of situations featuring "special aspects," rather than an exclusive list. See *Lugo, supra* at 516-520. The common thread is that, despite a danger being open and obvious, some characteristic of the hazard nevertheless impedes a person's ability to effectively evade the danger to which he or she might be exposed.

The hazard here is not static, like a pool of water or a 30-foot pit. In fact, as suggested above, the hazard actually involves at least one person other than the plaintiff. A plaintiff can control his or her own actions, but not those of someone else. As agreed, there is no way for any invitee on defendant's premises to avoid crossing traffic lanes. Similar to a fall into a large and equally dangerous open pit in a parking lot, a person on foot being struck by a moving automobile, even one traveling at the relatively low speeds of a parking lot, presents a clear and substantial risk of death or severe injury. It may be impossible to make interaction be-

tween vehicles and pedestrians *totally* safe. However, where the commercial design requires the patron to cross two lanes of vehicular traffic from the designated parking area to the sales floor and then back again on exiting, it sets up an abnormally dangerous dynamic. Under *Lugo*, "special aspects" would be present if the danger was unavoidable *or* if it would pose an unreasonably high risk of severe harm if not avoided. Here, the evidence tends to show that the premises actually satisfy both of the options set forth in *Lugo*. Reasonable minds surely can differ regarding whether under such circumstances the landowner, having allowed the hazard for the purpose of conducting commerce, has an obligation to his or her business invitees to manage and minimize this hazard in some reasonable way.

The trial court was correct in denying summary disposition to defendant Rockwood Center.